IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2006 NOV -6  A 9: 43

DEBRA P. HACKETT, CL
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| GEORGE HOEY MORRIS )<br>)<br>Plaintiff, )<br>)<br>VS. )<br>)<br>Gordon Ledbetter (INDIVIDUALLY) )<br>Chris Miles (INDIVIDUALLY) )<br>Alan Nummy (INDIVIDUALLY) )<br>ECLECTIC POLICE DEPARTMENT )<br>CITY OF ECLECTIC ALABAMA ) | CIVIL ACTION NO.:<br>2:06CV1006-MHT |

# Complaint

This is a complaint for violation of the plaintiff's right for freedom from unreasonable search without a warrant guaranteed by the Constitution of the United States of America. This is a complaint for the violation of Plaintiff's right for freedom from unlawful imprisonment and arrest without a warrant.

# Jurisdiction

1.) Plaintiff invokes jurisdiction of the United States District Court of the Middle District of Alabama.

2.) Plaintiff George Hoey Morris is an adult citizen and part time resident of Elmore County, Alabama.

3.) Defendant Gordon Ledbetter is an adult citizen and a resident of Elmore County, Alabama.

1

4.) Defendant Alan Nummy is an adult citizen and a resident of Elmore County, Alabama.

5.) Defendant Chris Miles is an adult citizen and resident of Elmore County, Alabama.

6.) Defendants City of Eclectic and the Eclectic Police Department are situate in Elmore County, Alabama.

## VENUE

7.) Venue is appropriate in the Middle District of Alabama because the City of Eclectic and the Eclectic Police Department are situate in the Middle District of Alabama.

8.) Venue is appropriate because Gordon Ledbetter. Chris Miles and Alan Nummy reside in the Middle District of Alabama.

9.) Venue is appropriate because a substantial part of the events or omissions giving to these claims occurred in the Middle District of Alabama.

Comes now the above referenced Plaintiff in the above styled case appearing Pro Se to show this honorable court the following.

10.) That Gordon Ledbetter (hereinafter referred to as Ledbetter) is the Chief of Police in Eclectic Alabama.

11.) That Chris Miles is an EPD Officer.

12.) That Alan Nummy is mayor of Eclectic and in charge of the EPD.

13.) That the Eclectic Police Department (hereinafter referred to as the EPD) participated in numerous searches of Plaintiff's residences in association with Thomas Coram Jr of Homeland Security (ICE) and that said searches uncovered no evidence to cause Morris arrest.

14.) That EPD participated in numerous searches of Morris' vehicle without a warrant and without permission and that said searches uncovered no evidence to cause Morris' arrest.

15.) That Alan Nummy is an employee of The Alabama Attorney General's office who represents Covington County against the Plaintiff in a civil suit.

16.) Thomas Coram Jr (being sued in a separate civil action) is close friends and neighbor of Nummy and Ledbetter and worked in conspiracy with them to create legal problems for Morris and cause his incarceration.

17.) That the EPD began the exert undue pressure on the Plaintiff in an effort to create a case against him for a crime and cause his incarceration.

18.) That the EPD did on (date unavailable) conduct overt surveillance on the Morris residence.

19.) That Heather Morris (hereinafter referred to as Heather) attempted to leave her home and was pulled over after she traveled approximately 500 yards and ordered to open her trunk so that EPD could check for "a garbage bag being smuggled from that residence"; said search being without warrant or permission. No contraband was discovered.

20.) That officer Ruth Peters (hereinafter referred to as Peters) along with an unidentified EPD officer did wake up the plaintiff on that same night to inquire about a missing juvenile female and the plaintiff did answer each and every question asked by those officers.

21.)   That the unidentified officer requested permission to "Come inside and look around" whereupon the plaintiff refused permission. Officer Ruth Peters then thanked the plaintiff for his cooperation and the two officers left.

22.)   That approximately fifteen minutes later EPD Chief Gordon Ledbetter returned to the residence with four or five EPD officers and ordered Mr. Morris to step back from the door and then intrusively entered the residence without permission and over Morris' objection and forcibly restrained Mr. Morris.

23.)   That Ledbetter complained over and over that "nobody likes you Hoey" and ordered his officers who were being commanded by Chris Miles to search the residence for the missing juvenile female while Mr. Morris was forcibly restrained and his freedom of movement curtailed against his wishes.

24.)   That the search quickly evolved into a drug search during which officers disrupted the entire home and searched every possible hiding place causing the house to be disorganized and in disarray.

25.)   That after approximately two hours Ledbetter called for a dog and while officers were catching the four house cats in preparation for the dog's "walk through" the Plaintiff's daughter in law Heather Morris (hereinafter referred to as Heather) became rattled causing her to drop her infant son William Ray Morris (hereinafter referred to as Ray) upside down and onto his head whereupon Ray was transferred by ambulance to the hospital.

26.)   That the dog failed to alert and no drugs were seized approximately four hours into the search.

27.) That the plaintiff was closely guarded and his freedom restricted even after the dog left and he was required to fecate twice under guard by the EPD and in full view of searching officers both male and female including Peters who walked by twice while plaintiff was seated on the toilet.

28.) That after approximately five hours Mr. Morris was placed under arrest and transported to the Eclectic jail on a charge of "paraphernalia" where he remained for 2 or 3 hours while officers continued searching the home.

29.) That Ledbetter returned to the city jail and booked Morris on charges of "possession of marijuana" whereupon he was transported to the county jail.

30.) That the officers did not in fact find marijuana nor paraphernalia in the residence and left storage area closets in disarray and the home in chaotic disruption including a garbage can emptied onto the kitchen floor and its contents strewn across that room.

31.) That during the time that Morris was in jail and Heather and Ray in the hospital the EPD continued to occupy and search the residence and eventually searched the plaintiff's vehicle without a warrant.

32.) That when plaintiff's son William Hoey Morris (hereinafter referred to as William) returned to discover officers occupying his empty home he was forcibly restrained and questioned and his vehicle searched without his permission or a warrant.

33.) That Ledbetter returned to the residence the following day to require Heather Morris to submit to a drug test. Heather complied and the test was negative.

34.) That approximately six weeks after Morris had been illegally arrested by Thomas Coram for "forgery" on the premise that signing his own name was a crime, Morris was driving to the Elmore County courthouse to be present at that hearing.

35.) That EPD chief Gordon Ledbetter pulled the plaintiff over immediately after Morris left to go to that hearing and stated that he had a warrant for Morris' arrest, when in fact he did not.

36.) That Ledbetter then transported Morris to the Elmore County jail where he later wrote up a warrant that was in effect a rambling narrative making several untrue accusations. The warrant did not exist prior to the arrest.

37.) That Ledbetter slowly processed Morris into the jail while the forgery hearing was underway and refused to notify the Court of Morris arrest causing Morris to miss the hearing and failure to appear warrant to be issued. The final sentence in his "warrant" acknowledged that he had no warrant and would get the "victim" to provide same.

38.) That Morris, on the basis of misleading testimony and perjury by Ledbetter's friend and co-conspirator Thomas Coram Jr, was placed under arrest on the basis of an error he made almost four years earlier and was placed on electronic monitoring while awaiting trial on federal charges.

39.) That Morris was on electronic monitoring in a residence approximately 200 yards from the EPD station.

40.) That after approximately six weeks of monitoring during which time the EPD always knew Morris' location; Morris went to a scheduled hearing with his attorney in Montgomery.

41.) The Morris' attorney Jennifer Hart failed to notify Morris' probation officer Bernard Ross of the visit as she had agreed to do and as Morris was required.

42.) That Thomas Coram or Ledbetter called Bernard Ross and asked if Morris had permission to leave his home whereupon Mr. Ross told them Morris had no permission.

43.) With their mistaken belief that Morris was violating his supervised release, Coram and Ledbetter arranged the arrest of Morris. As soon as he entered Elmore County, Morris was pulled over by a Wetumpka police officer who said there were two failure to appear warrants from Eclectic. Morris was transported to the Elmore County jail where employees said there was no warrant.

44.) That a few hours later officer Ruth Peters delivered two handwritten warrants alleging failure to appear causing Morris to be arrested and incarcerated.

45.) That officer Ruth Peters also delivered a warrant for "giving a false name to a police officer" allegedly written by officer Daniel Dean and that Morris was required to post a $4000.00 bond on the felony charge.

46.) That the Dean warrant supposedly was created after Morris signed a speeding ticket with his birth name George Hoey Morris several months before when his car was searched with the assistance of EPD.

47.) That Morris did not give a false name to Dean but the charge should have been a misdemeanor if in fact he had committed this crime. EPD deliberately charged Morris with a felony causing him to post a $4000.00 bond in an effort to create the maximum problem for plaintiff.

48.) That the Dean charge mysteriously disappeared from the docket; further proof the charge was malicious prosecution in that the charge had no merit. In fact, Officer Dean may not have signed that warrant.

49.) That if in fact the two failures to appear warrant existed, (which they did not) EPD knew the whereabouts of the Plaintiff and could have arrested him at any time. The creation of the warrants and the timing of their execution was a conspiracy between

Coram and Ledbetter to cause Morris to violate his pre-trial release in their mistaken belief that Morris had left home without permission.

50.)    That probation officer Bernard Ross refused to violate Morris for what he correctly described as "trumped up charges" and Morris returned to pre-trial supervision after his release.

51.)    That after Morris was re-indicted (superseding indictment) with charges that changed the facts surrounding two gun charges caused by Thomas Coram Jr., Ledbetter provided testimony to make it appear as if he had initiated those gun charges rather than them having been initiated by Mr. Coram.

**Wherefore**, the aforementioned premise considered:

Plaintiff Morris prays this Court require Nummy and Ledbetter to provide the identity of all police officers in all jurisdictions who participated in the foregoing described events so that they may be deposed under oath regarding the facts of this cause of action. That Nummy and Ledbetter be required to produce all radio transmission logs, incident reports, evidence, information and all other records regarding the foregoing described incidents.

## First Cause of Action

Plaintiff George Hoey Morris realleges and incorporated by reference paragraphs 1 through 51 as if set forth fully herein.

52.)    That the EPD grossly violated Morris constitutional protection against unreasonable search and unlawful imprisonment when they searched the Morris home without a warrant and without permission and arrested the plaintiff.

8

53.) The actions of Ledbetter and the EPD caused Morris unlawful imprisonment, stress, financial hardship, embarrassment, mental anguish, stress and humiliation.

**Wherefore,** Plaintiff George Hoey Morris demands:

A judgment against the Defendants of a monetary award for compensatory and punitive damages.

## Second Cause of Action

Plaintiff George Hoey Morris realleges and incorporates by reference paragraphs 1 through 51 as if set forth fully herein.

54.) That the arrest of Morris without a warrant while he was driving to the "forgery" hearing was a deliberate attempt by Ledbetter to cause Morris to miss that hearing and the result of a conspiracy with Thomas Coram Jr.

55.) That the arrest was a gross violation of Morris' Constitutional protection from unlawful detention.

56.) That the trunk of Morris' car was searched while Morris was incarcerated and this search was a violation of Morris' Constitutional protection against unreasonable search.

**Wherefore,** Plaintiff George Hoey Morris demands:

A judgment against the Defendant of a monetary award for compensatory and punitive damages.

## Third Cause of Action

Plaintiff George Hoey Morris realleges and incorporated by reference paragraphs 1 through 51 as if set forth fully herein.

9

57.)   That the arrest of Morris by the Wetumpka police officer at the request of Coram and Ledbetter was an intentional effort by them to cause Morris' violation of his pre-trial detention and that no arrest warrants existed.

58.)   That this arrest was a violation of Morris' Constitutional protection against unlawful imprisonment.

**Wherefore,** Plaintiff George Hoey Morris demands:

A judgment against the Defendants of a monetary award for compensatory and punitive damages.

## Fourth Cause of Action

59.)   That the creation of a warrant alleging that Morris provided a false name to officer Daniel Dean was a violation of Morris Constitutional protection against unlawful imprisonment.

**Wherefore,** Plaintiff George Hoey Morris demands:

A judgment against the Defendants of a monetary award for compensatory and punitive damages.

**Having put forth** the foregoing causes of action alleging violation of the Plaintiff's Constitutional protection, the undersigned prays that this court award him the requested compensatory and punitive damages and such action, further or different relief to which Plaintiff may be entitled.

## 𝔙erification

Before me the undersigned notary public, appeared George Hoey Morris, who being duly sworn, did sign his name in attestation that the foregoing factual allegations contained in this complaint are true and correct to the best of his knowledge, information and belief on this the __01__ day of __Nov__ 2006.

_____
George Hoey Morris

𝔖worn to and subscribed before me on this the __1st__ day of __November__ 2006.

_____
Notary Public

My commission expires __March 17, 2009__

# Certificate of Service

I hereby certify that on the \_\_\_\_\_06\_\_\_\_\_ day of \_\_\_\_\_Nov\_\_\_\_\_ 2006, that I provided a true and correct copy of the foregoing to the following Defendants by placing same in the United States mail postage prepaid and properly addressed as follows:

Alan Nummy
City Hall
Main Street
Eclectic, Alabama 36024

Gordon Ledbetter
City Hall
Main Street
Eclectic, Alabama 36024

City of Eclectic
City Hall
Main Street
Eclectic, Alabama 36024

Eclectic Police Department
City Hall
Main Street
Eclectic, Alabama 36024

Chris Miles
City Hall
Main Street
Eclectic, Alabama 36024

George Hoey Morris
GeorgeHoeyMorris.com

Federal Detention Annex
P.O. Box 159
Montgomery, Alabama 36101

DEFENDANTS NOTIFIED CERTIFIED MAIL